**Michael Grinblat** (4159752)
Law Offices of Michael Grinblat
10 East 39th Street, 12th Floor
New York, NY 10016
Tel:  (347) 796-0712
Fax: (212) 202-5130
Email: michael.grinblatesq@gmail.com
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BERNICE FRIMPONG, | **COMPLAINT** |
| Plaintiff, | |
| -against- | |
| **PUNJAB WINE AND LIQUOR LLC, NAVHASTA LLC, POKHREL INC., ROCKAWAY CONDUIT HOLDINGS LLC, JOHN DOE 1-X**, persons yet unknown, Limited Liability Companies, Partnerships, Corporations 1-X, entities yet unknown, | **CASE NO.: 22-cv-4406** |
| | **JURY DEMANDED** |
| Defendants. | |

## CIVIL COMPLAINT

BERNICE FRIMPONG ("Plaintiff"), as and for her complaint against PUNJAB WINE AND LIQUOR LLC, NAVHASTA LLC, POKHREL INC., ROCKAWAY CONDUIT HOLDINGS LLC, JOHN DOE 1-X, persons yet unknown, Limited Liability Companies, Partnerships, Corporations 1-X, entities yet unknown ("Defendants"), respectfully brings before the Court the below allegations.

1

## STATEMENT OF PLAINTIFF'S CLAIMS

1. This is an action under Title III of the Americans with Disabilities Act of 1990 (the "ADA") to enjoin unlawful discrimination based on disability. Plaintiff was discriminated against on the basis of disability and was denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the places of public accommodation owned, leased, leased to, controlled, managed, or operated, by Defendants.

2. Plaintiff files this action complaining of the violations of Title III of the ADA. This action is brought under ADA 42 U.S.C. §12182, §12183, and §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. §2000a-3, §204 of the Civil Rights Act of 1964 – the ADA's Accessibility Guidelines, 28 C.F.R. Part 36, subpart D, the 2004 ADA Accessibility Guidelines ("ADAAG") at 36 C.F.R. Part 1191, appendices B and D, the 2010 ADA Standards for Accessible Design ("2010 Standards"), the Building Code of the State of New York, as well as New York State Civil Rights Law §40-c and §40-d, New York State Human Rights Law §296, and New York City Human Rights Law [Administrative Code] §8-107.

3. Plaintiff seeks compensatory and statutory damages, declaratory and injunctive reliefs, attorney's fees, expert fees, and costs against Defendants, as well as such other relief as the Court deems to be just and proper.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §451, §1331, §1337, §1343, §2201, §2202, and 42 U.S.C.A. §12181, *et seq.*, as it involves federal questions regarding the deprivation of Plaintiff's rights under the ADA.

5. This Court has supplemental jurisdiction over Plaintiff's allegations arising from Defendants' state law violations pursuant to 28 U.S.C. §1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because all events, or omissions, giving rise to this action, and alleged herein, occurred in this district. Venue is also proper in this district because Defendants' properties, the public accommodations, which are the subjects of this action, are located in, and do business within, this judicial district.

## PARTIES

7. Plaintiff is, and at all times material to this litigation has been, a resident of the Bronx County, New York.

8. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. §12131, who is expressly authorized to bring this action under §308 of the ADA, 42 U.S.C. §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. §2000a-3, §204 of the Civil Rights Act of 1964.

9. Defendant PUNJAB WINE AND LIQUOR LLC owns, and/or leases (or leases to), and/or has control over, and/or manages, and/or maintains, and/or designed, and/or built, and/or constructed, and/or altered, and/or operates, and at all relevant times operated, the store

Punjab Liquor & Wine and the parking lot adjacent to it, which is provided for the use of the store's customers.

10. Defendant NAVHASTA LLC and/or Defendant POKHREL INC. own, and/or lease (or leases to), and/or have control over, and/or manage, and/or maintain, and/or designed, and/or built, and/or constructed, and/or altered, and/or operate, and at all relevant times operated, the restaurant "Tandoori Kitchen" and the parking lot adjacent to it, which is provided for the use of the restaurant's customers.

11. Defendant NAVHASTA LLC owns, and/or leases (or leases to), and/or has control over, and/or manages, and/or maintains, and/or designed, and/or built, and/or constructed, and/or altered, and/or operates, and at all relevant times operated, the restaurant "Tandoori Kitchen" and the parking lot adjacent to it, which is provided for the use of the restaurant's customers.

12. Defendant POKHREL INC. owns, and/or leases (or leases to), and/or has control over, and/or manages, and/or maintains, and/or designed, and/or built, and/or constructed, and/or altered, and/or operates, and at all relevant times operated, the restaurant "Tandoori Kitchen" and the parking lot adjacent to it, which is provided for the use of the restaurant's customers.

13. Defendant ROCKAWAY CONDUIT HOLDINGS LLC owns, and/or leases (or leases to), and/or has control over, and/or manages, and/or maintains, and/or designed, and/or built, and/or constructed, and/or altered, and/or operates, and at all relevant times operated, the commercial lot, on which both the store Punjab Liquor and Wine, and the restaurant Tandoori Kitchen are located. The parking lot, which serves both the liquor store and the restaurant, is also located on that commercial lot.

14. Defendant ROCKAWAY CONDUIT HOLDINGS LLC leases its building and/or land to one of its tenants, Defendant PUNJAB WINE AND LIQUOR LLC.

15. Defendant ROCKAWAY CONDUIT HOLDINGS LLC leases its building and/or land to one of its tenants, Defendant NAVHASTA LLC.

16. Defendant ROCKAWAY CONDUIT HOLDINGS LLC leases its building and/or land to one of its tenants, Defendant POKHREL INC.

17. The store Punjab Liquor & Wine, the adjacent restaurant Tandoori Kitchen, and adjacent parking lot, are the subjects of this lawsuit and are hereinafter referred to as the "Subject Facilities".

18. The store Punjab Liquor & Wine and the adjacent parking lot are located at 154-10 Rockaway Boulevard, Jamaica, NY 11434.

19. The restaurant Tandoori Kitchen and the adjacent parking lot are located at 154-12 Rockaway Boulevard, Jamaica, NY 11434.

20. The store Punjab Liquor & Wine and the restaurant Tandoori Kitchen are located next door to each other and share the same parking lot, which is provided for convenience of their customers.

21. Defendant PUNJAB WINE AND LIQUOR LLC owns, and/or leases, and/or manages, and/or has control over, and/or designed, and/or built, and/or constructed, and/or altered, and/or operates, and at all relevant times operated, the store under the name Punjab Liquor & Wine.

22. Defendant NAVHASTA LLC owns, and/or leases, and/or manages, and/or has control over, and/or designed, and/or built, and/or constructed, and/or altered, and/or operates, and at all relevant times operated, the restaurant under the name Tandoori Kitchen.

23. Defendant POKHREL INC. owns, and/or leases, and/or manages, and/or has control over, and/or designed, and/or built, and/or constructed, and/or altered, and/or operates, and at all relevant times operated, the restaurant under the name Tandoori Kitchen.

24. Upon information and belief Defendant PUNJAB WINE AND LIQUOR LLC owns, and/or leases, and/or manages, and/or maintains, and/or has control over, and/or designed, and/or marked, and/or placed signs on, and/or built, and/or constructed, and/or altered, and/or operates, and at all relevant times operated, the parking lot, adjacent to the store Punjab Liquor & Wine, which is provided for the use of its customers.

25. Upon information and belief Defendant NAVHASTA LLC owns, and/or leases, and/or manages, and/or maintains, and/or has control over, and/or designed, and/or marked, and/or placed signs on, and/or built, and/or constructed, and/or altered, and/or operates, and at all relevant times operated, the parking lot, adjacent to the restaurant Tandoori Kitchen, which is provided for the use of its customers.

26. Upon information and belief Defendant POKHREL INC. owns, and/or leases, and/or manages, and/or maintains, and/or has control over, and/or designed, and/or marked, and/or placed signs on, and/or built, and/or constructed, and/or altered, and/or operates, and at all relevant times operated, the parking lot, adjacent to the restaurant Tandoori Kitchen, which is provided for the use of its customers.

27. PUNJAB WINE AND LIQUOR LLC is an American for-profit limited liability company organized under the laws of New York State.

28. PUNJAB WINE AND LIQUOR LLC is licensed to conduct business in the State of New York by the New York State Department of State ("NYS DOS").

29. NYS DOS maintains entity information for PUNJAB WINE AND LIQUOR LLC in its Corporation and Business Entity Database.

30. The corporate record for PUNJAB WINE AND LIQUOR LLC contains neither the name nor address of its chief executive officer.

31. The corporate record for PUNJAB WINE AND LIQUOR LLC contains no address of its principal executive office.

32. The corporate record for PUNJAB WINE AND LIQUOR LLC contains neither the name nor address of its registered agent.

33. The name and address to which NYS DOS mails process, when accepted on behalf of PUNJAB WINE AND LIQUOR LLC, is Amrik Singh, 154-10 Rockaway Boulevard, Jamaica, NY 11434.

34. Plaintiff does not have sufficient information to ascertain the identity of the entity that operates the restaurant Tandoori Kitchen. Plaintiff intends to obtain that information during discovery.

35. New York City maintains a database NYC Business (https://www1.nyc.gov/nycbusiness/status/licenses-permits), which contains information about the business operating at the address at which Tandoori Kitchen operates. The database states that the facility is doing business as "Tandoori Curry & Indo Chinese" at 154-12 Rockaway Boulevard, Jamaica, NY 11434-3634. The database also shows that the License ID is 50102276, that the applicant's name is NAVHASTA LLC and that it can be contacted at the above address. The database shows that the information is current as of January 31, 2022. Relying on that official information about the business entity, Plaintiff determined that NAVHASTA LLC operates the restaurant Tandoori Kitchen.

36. NAVHASTA LLC is an American for-profit limited liability company organized under the laws of New York State.

37. NAVHASTA LLC is licensed to conduct business in the State of New York by the NYS DOS.

38. NYS DOS maintains entity information for NAVHASTA LLC in its Corporation and Business Entity Database.

39. The corporate record for NAVHASTA LLC contains neither the name nor address of its chief executive officer.

40. The corporate record for NAVHASTA LLC contains no address of its principal executive office.

41. The corporate record for NAVHASTA LLC contains neither the name nor address of its registered agent.

42. The name and address to which NYS DOS mails process when accepted on behalf of NAVHASTA LLC, is Navhasta LLC, 154-12 Rockaway Boulevard, Jamaica, NY 11434.

43. On the wall in the back of the restaurant, Tandoori Kitchen, hangs a framed certificate, issued by the New York State Department of Taxation and Finance, identification number 84-5093346. It states the following: "Pokhrel Inc., Tandoori Kitchen, 15412 Rockaway Blvd, Jamaica, NY 11434-3634." Relying on that official information about the business entity, Plaintiff determined that POKHREL INC. operates the restaurant Tandoori Kitchen.

44. POKHREL INC. is an American for-profit corporation organized under the laws of New York State.

45. POKHREL INC. is licensed to conduct business in the State of New York by the NYS DOS.

46. NYS DOS maintains entity information for POKHREL INC. in its Corporation and Business Entity Database.

47. The corporate record for POKHREL INC. contains neither the name nor address of its chief executive officer.

48. The corporate record for POKHREL INC. contains no address of its principal executive office.

49. The corporate record for POKHREL INC. contains the following name and address of its registered agent: Tara Pokhrel, 814 Wyckoff Avenue #3B, Brooklyn, NY 11237.

50. The name and address to which NYS DOS mails process when accepted on behalf of POKHREL INC., is the following: Tara Pokhrel, 814 Wyckoff Avenue #3B, Brooklyn, NY 11237.

51. The Office of the City Register of New York City Department of Finance maintains a deed record showing that the commercial lot, on which the Subject Facilities are located, is owned by ROCKAWAY CONDUIT HOLDINGS LLC.

52. ROCKAWAY CONDUIT HOLDINGS LLC at all relevant times was, and currently is, an owner of the commercial real estate lot in Queens County, on which the Subject Facilities are located.

53. Defendant ROCKAWAY CONDUIT HOLDINGS LLC is a landlord and leases its building and land, on which the parking lot of the Subject Facilities is located, to Defendant PUNJAB WINE AND LIQUOR LLC.

54. Defendant ROCKAWAY CONDUIT HOLDINGS LLC is a landlord and leases its building and land, on which the parking lot of the Subject Facilities is located, to Defendant NAVHASTA LLC.

55. Defendant ROCKAWAY CONDUIT HOLDINGS LLC is a landlord and leases its building and land, on which the parking lot of the Subject Facilities is located, to Defendant POKHREL INC.

56. ROCKAWAY CONDUIT HOLDINGS LLC is an American for-profit limited liability company organized under the laws of New York.

57. ROCKAWAY CONDUIT HOLDINGS LLC is licensed to conduct business in the State of New York by the NYS DOS.

58. NYS DOS maintains entity information for ROCKAWAY CONDUIT HOLDINGS LLC in its Corporation and Business Entity Database.

59. The corporate record for ROCKAWAY CONDUIT HOLDINGS LLC contains neither the name nor address of its chief executive officer.

60. The corporate record for ROCKAWAY CONDUIT HOLDINGS LLC contains no address of its principal executive office.

61. The corporate record for ROCKAWAY CONDUIT HOLDINGS LLC contains neither the name nor address of its registered agent.

62. The address to which NYS DOS mails process, when accepted on behalf of ROCKAWAY CONDUIT HOLDINGS LLC, is Gurcharan Singh, 1 Stoneridge Court, Syosset, NY 11791.

63. ROCKAWAY CONDUIT HOLDINGS LLC owns, and/or manages, and/or maintains, and/or has control over, and/or designed, and/or built, and/or constructed, and/or altered, and/or marked, and/or placed signs on, and/or operates, and at all relevant times operated, the parking lot adjacent to the store Punjab Liquor & Wine and restaurant Tandoori Kitchen.

64. Defendant ROCKAWAY CONDUIT HOLDINGS LLC leases commercial space in its building to Defendant PUNJAB WINE AND LIQUOR LLC, in which the latter operates its store Punjab Liquor & Wine.

65. Defendant ROCKAWAY CONDUIT HOLDINGS LLC leases commercial space in its building to Defendant NAVHASTA LLC, in which the latter operates its restaurant Tandoori Kitchen.

66. Defendant ROCKAWAY CONDUIT HOLDINGS LLC leases commercial space in its building to Defendant POKHREL INC., in which the latter operates its restaurant Tandoori Kitchen.

67. Punjab Liquor & Wine is a store and is thus a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104 Place of public accommodation (5), the New York State Human Rights Law §292(9) and the New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

68. Tandoori Kitchen is a restaurant and is thus a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104 Place of public accommodation (2), the New York State Human Rights Law §292(9) and the New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

69. Defendants JOHN DOE 1-X, Limited Liability Companies, Partnerships, and Corporations 1-X are persons or entities yet unknown, but who or which might share liability as owners or tenants of the Subject Facilities. At all relevant times they might have been, and currently might be, either owners, lessors, or operators of the commercial real estate lot in Queens County, on which the Subject Facilities are located, and of the building in which they operate. Either one or several of them might be a landlord and lease its/their building and

land, on which the parking lot of the Subject Facilities is located, to Defendants PUNJAB WINE AND LIQUOR LLC, NAVHASTA LLC, and POKHREL INC.

70. Either one, or all, Defendants, jointly, or severally, simultaneously, or at different times, at all relevant times, was an owner, and/or landlord, and/or lessor, and/or lessee, and/or tenant, of the commercial lot in Queens County, on which the Subject Facilities are located, who jointly, or severally, owned, and/or leased, and/or managed, and/or had control over, and/or designed, and/or constructed, and/or built, and/or altered, and/or modified, and/or painted, and/or marked, and/or placed signs on, and/or operated, and/or maintained, the parking lot adjacent to the store Punjab Liquor & Wine, which is provided for the purpose of enabling customers of the store to park at it and visit the store.

71. Either one, or all, Defendants, jointly, or severally, simultaneously, or at different times, at all relevant times, was an owner, and/or landlord, and/or lessor, and/or lessee, and/or tenant, of the commercial lot in Queens County, on which the Subject Facilities are located, who jointly, or severally, owned, and/or leased, and/or managed, and/or had control over, and/or designed, and/or constructed, and/or built, and/or altered, and/or modified, and/or painted, and/or marked, and/or placed signs on, and/or operated, and/or maintained, the parking lot adjacent to the restaurant Tandoori Kitchen, which is provided for the purpose of enabling customers of the restaurant to park at it and visit the restaurant.

72. Either one of Defendants, or all of them, jointly or severally, simultaneously, or at different times, at all relevant times, was an owner, and/or landlord, and/or lessor, and/or lessee, and/or tenant, and/or managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or painted, and/or marked, and/or placed signs on,

and/or maintained, and/or altered the building, and/or the store Punjab Liquor & Wine, which is part of the Subject Facilities.

73. Either one of Defendants, or all of them, jointly or severally, simultaneously, or at different times, at all relevant times, was an owner, and/or landlord, and/or lessor, and/or lessee, and/or tenant, and/or managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or altered the building, and/or the restaurant Tandoori Kitchen, which is part of the Subject Facilities.

74. Defendants are jointly and severally liable for the design, construction, maintenance, management, control, alteration, and/or operation of the parking lot, which is part of the Subject Facilities.

75. Defendants are jointly and severally liable for the design, construction, maintenance, management, control, alteration, and/or operation of the store Punjab Liquor & Wine, which is part of the Subject Facilities.

76. Defendants are jointly and severally liable for the design, construction, maintenance, management, control, alteration, and/or operation of the restaurant Tandoori Kitchen, which is part of the Subject Facilities.

## STATUTORY SCHEME

77. On July 26, 1990, Republican President George H. W. Bush, who himself subsequently became disabled and had to rely on a wheelchair later in his life, signed the ADA into law, which extended essential civil rights to individuals with disabilities.

78. That law had been championed by Senator Robert J. Dole, who himself had suffered significant disability, which resulted from the wounds he has received while fighting in Italy during liberation of the world from the Fascists' dictatorship during World War II.

79. On that day, July 26, 1990, the United States of America enacted the ADA, establishing extremely important and incontrovertibly indispensable civil rights for individuals with disabilities, including the right to full and equal enjoyment of goods, services, facilities, privileges, and access to places of public accommodation.

80. Congress made the following findings:

   a. Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;
   b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;
   c. Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodation, education, transportation, communication, recreation, institutionalization, health services, voting and access to public services;
   d. Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria,

segregation, and regulation to lesser services, programs, activities, benefits, jobs or other opportunities; and

e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (8)

81. Furthermore, Congress also explicitly stated that the ADA had to:

a. Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

c. Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4)

82. Furthermore, pursuant to 42 U.S.C. §12182 and 28 C.F.R. §36.201(a), the congressional intent was to ensure that no place of public accommodation may discriminate against an individual on the basis of such individual's disability, with regard to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at that place of public accommodation.

83. Congress provided commercial businesses at least 18 months from enactment to make their facilities compliant with the regulations in the ADA. The effective date of Title III of the

ADA was January 26, 1992, or January 26, 1993, if a defendant has ten (10), or fewer, employees and gross receipts of $500,000, or less. 42 U.S.C. §12183; 28 C.F.R. §36.508(a).

84. The 2000 United States census indicates that in the civilian non-institutionalized population more than 49.7 million people in the United States have a disability. The census also indicates that more than 1.39 million New Yorkers have a mobility disability.

85. ADA 42 U.S.C. §12182(a), the New York State Civil Rights laws, the New York State Human Rights laws, and the New York City Human Rights laws recognize individuals with disabilities as a protected class.

86. It is unlawful for a private entity, which owns, leases, leases to, or operates a place of public accommodation, to discriminate against an individual with a disability. 42 U.S.C. §12182(b)(1)(A), 28 C.F.R. §36.201(a) and (b).

87. Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the ADAAG, 28 C.F.R. §36, under which it may obtain civil penalties of up to $110,000 for the first violation and $150,000 for any subsequent violation.

88. The landlord, who owns the building that houses a place of public accommodation and the tenant, who owns, or operates the place of public accommodation, have a non-delegable duty to comply with the ADA, 28 C.F.R. §36.201(a) and (b), the New York State Civil Rights laws, and the New York State and City Human Rights laws.

89. The Subject Facilities affect interstate commerce within the meaning of the ADA, 42 U.S.C. §12181(7)(B), 42 U.S.C. §12181(7)(E), 28 C.F.R. §36.104 Place of public accommodation (2), and 28 C.F.R. §36.104 Place of public accommodation (5).

90. Regardless of any contractual provisions stating otherwise, the landlord and owner of the property, which houses the public accommodation, cannot escape liability for the tenant's failure to comply with the ADA, 28 C.F.R. §36.201, the New York State Civil Rights laws, and the New York State and City Human Rights laws.

91. Discriminatory intent is not required to establish liability under the ADA, the New York State Civil Rights Laws, and the New York State and City Human Rights laws.

92. One type of disability discrimination is the failure of an owner, or an operator, of a public accommodation to remove those architectural barriers, removal of which is readily achievable.

> A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.

28 C.F.R. §36.304

93. Defendants must remove all barriers, removal of which is readily achievable, that deny an individual with a disability the opportunity to participate in, or benefit from, services, or accommodations, on the basis of their disability, 28 C.F.R. §36.304.

94. Removal of the architectural barriers is readily achievable by Defendants.

95. Plaintiff is informed and believes, and therefore alleges, that the Subject Facilities have begun operations, and/or undergone substantial remodeling, repairs and/or alterations,

since January 26, 1990, and/or have sufficient income to make readily achievable accessibility modifications.

## FACTUAL ALLEGATIONS AND FIRST CAUSE OF ACTION

### Plaintiff's Background

96. Plaintiff is a 40-year-old-woman.

97. Plaintiff has been diagnosed with poliomyelitis by her treating physician when she was three years old.

98. Furthermore, Plaintiff's right leg is longer than her left leg.

99. Plaintiff has not been able to walk for the past 20 years.

100.     Plaintiff's physician has prescribed her a wheelchair.

101.     Plaintiff depends on her wheelchair for mobility and uses it every day.

102.     Plaintiff cannot move about without her wheelchair.

103.     Plaintiff uses a manual wheelchair and moves about by rotating its wheels with her hands.

104.     When Plaintiff travels in a van or car, she needs appropriate and statutorily mandated access aisle next to accessible parking space to exit vehicle with her wheelchair.

105.     Plaintiff requires an accessible parking space located close to entrance of a facility.

106.     Routes connecting accessible spaces and all features, goods and services of a facility must be level, properly sloped, sufficiently wide and without cracks, holes or other hazards that can pose danger of tipping, catching wheels, or falling.

107.     Plaintiff is "disabled" under the statute, which in pertinent part states:

> *Disability* means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual…. The phrase *major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

28 C.F.R. §36.104 (italics in original).

108.     There are more than ten parking spaces in the parking lot of the Subject Facilities.

109.     Two parking spaces in the Subject Facilities' parking lot are identified as accessible by blue marking lines on the pavement and blue international symbols of accessibility painted on the ground inside of each space.

110.     There is an access aisle in the parking lot of the Subject Facilities, which is located between the two accessible parking spaces.

111.     In April 2022 Plaintiff visited the Subject Facilities.

112.     Plaintiff came to the Subject Facilities in an accessible van.

113.     The accessible van parked in one of the accessible parking spaces of the Subject Facilities' parking lot.

114.     Plaintiff had difficulties exiting the accessible van with her wheelchair on the ground of the parking lot of the Subject Facilities, because of the slope of the accessible parking space.

115.     Plaintiff also had difficulties exiting the accessible van with her wheelchair on the ground of the parking lot of the Subject Facilities, because of the slope of the access aisle.

116.     In addition, Plaintiff had difficulties exiting the accessible van with her wheelchair in the access aisle, because the access aisle was too narrow.

117.     Plaintiff also had difficulties exiting from the accessible van with the wheelchair in the access aisle, because the surface of the access aisle was cracked, damaged and uneven.

118.     Plaintiff was barely able to move her manual wheelchair with her hands, by rotating its wheels, in both the access aisle and accessible parking space in the parking lot of the Subject Facilities, because they had steep slopes.

119.     Plaintiff also was barely able to rotate the wheels of her manual wheelchair with her hands, because the surface of the accessible parking space and of the access aisle was cracked, damaged and uneven.

120.     With difficulties, Plaintiff then rode in her wheelchair to Punjab Liquor & Wine store.

121.     Plaintiff had difficulties shopping in Punjab Liquor & Wine store, because the aisle in the back of the store was impermissibly narrow and she was not able to enter the narrow aisle in her wheelchair.

122.     Plaintiff bought an item in Punjab Liquor & Wine store and obtained a receipt from the cashier.

123.     A short time later on the same day Plaintiff also visited the adjacent restaurant, Tandoori Kitchen, in order to purchase a meal there.

124.     Inside of the restaurant, Tandoori Kitchen, Plaintiff had difficulties using the lavatory, because the required rear grab bar was not installed on the wall.

125.     Plaintiff bought a meal at Tandoori Kitchen and obtained a receipt.

126.     Plaintiff then had difficulties entering the accessible van with her wheelchair, because the accessible parking space had steep slopes.

127.     Plaintiff also had difficulties entering the accessible van with her wheelchair, because the access aisle was too narrow.

128.     In addition, Plaintiff had difficulties entering the accessible van with her wheelchair, because the ground surface of the access aisle was cracked, damaged and uneven.

129.     Plaintiff also had difficulties entering the accessible van with her wheelchair, because the ground surface of the accessible parking space was cracked, damaged and uneven.

130.     Frustrated, disappointed, and humiliated, Plaintiff left the Subject Facilities after making purchases.

131.     The Subject Facilities were designed by Defendants, who did not have Plaintiff and her needs in mind, to accommodate her and facilitate her access to the Subject Facilities.

132.     The parking lot of the Subject Facilities was designed by Defendants, who disregarded the accessibility requirements of Plaintiff by failing to accommodate her and facilitate her access to the store and restaurant.

133.     The parking lot of the Subject Facilities was not designed to accommodate the needs of Plaintiff.

134.     The parking lot of the Subject Facilities was not constructed to facilitate access to the store and restaurant by Plaintiff.

**Plaintiff Intends to Return to the Subject Facilities**

135.     The Subject Facilities are in Jamaica, Queens.

136.     The Subject Facilities are located within 30 miles from Plaintiff's home in the Bronx.

137.     Plaintiff enjoys coming to Jamaica, Queens.

138.     The Subject Facilities are conveniently located.

139.     Plaintiff intends to visit the Subject Facilities again in the future, purchase meals and beverages offered for sale in Tandoori Kitchen restaurant, as well as buy items in Punjab Liquor & Wine store, and enjoy their services as soon as the architectural barriers are removed.

**Plaintiff is a Tester**

140.     Plaintiff is an advocate of the rights of disabled persons and is a tester for the purpose of asserting her civil rights.

141.     Plaintiff visits places of public accommodation to determine whether they are compliant with the ADA.

142.     Completely independent of the personal desire to have access to the Subject Facilities free of illegal barriers to access, Plaintiff is a tester for the purpose of discovering, encountering, and engaging discrimination against the disabled in public accommodations.

143.     As a tester, Plaintiff visits public accommodations and purposely encounters barriers to access.

144.     Plaintiff purposely tests barriers to access in public accommodations to determine whether they are unlawful.

145.     When Plaintiff determines that barriers to access are unlawful, she initiates a legal action against an owner, operator, lessor, or lessee of a public accommodation to end discrimination.

146.     Following completion of a legal action, Plaintiff intends to return to the same place of public accommodation to ensure its compliance with the ADA.

147.     As a tester, Plaintiff visited Defendants' Subject Facilities to encounter architectural barriers to access.

148.     As a tester, Plaintiff personally encountered the architectural barriers in Defendants' Subject Facilities.

149.     Plaintiff visited Punjab Liquor & Wine store, purchased an item in it, and encountered ADA violations inside of it.

150.     Plaintiff visited Tandoori Kitchen restaurant, purchased a meal in it, and encountered an ADA violation inside of it.

151.     Plaintiff came to Defendants' parking lot, in which the Subject Facilities are located, in an accessible van and encountered numerous ADA violations inside of the parking lot.

152.     Following conclusion of this lawsuit, Plaintiff intends to return to the Subject Facilities as a tester to determine whether Defendants remediated the ADA violations in the parking lot, as well as inside of the store and restaurant, and to purchase food and beverages in Tandoori Kitchen restaurant, as well as items offered for sale in Punjab Liquor & Wine store.

153.     Plaintiff's motivation to return to the Subject Facilities, in part, stems from her desire to utilize ADA litigation to make her city more accessible for Plaintiff and other

disabled individuals, who cannot visit Defendants' Subject Facilities because of the architectural barriers.

154.     Plaintiff pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court, including returning to the Subject Facilities as soon as they are accessible, so that an injunction can be issued by this Court upon Defendants, ordering them to correct the numerous ADA violations of the Subject Facilities.

155.     Following conclusion of this lawsuit, Plaintiff intends to visit the Subject Facilities twice a year to ensure that Defendants comply with the ADA and purchase food in Punjab Liquor & Wine store and meals in Tandoori Kitchen restaurant.

156.     Plaintiff is confident that Defendants will not remediate the ADA violations in their Subject Facilities without the Court's intervention.

157.     Plaintiff will continue to suffer discrimination without the Court's intervention.

158.     Plaintiff will enforce the injunction once it is issued by the Court.


**Violations of Title III in the Subject Facilities**

159.     Plaintiff has difficulties gaining access to the Subject Facilities, because of the unlawful architectural barriers, and therefore has suffered an injury in fact.

160.     Since at least April 2022, Defendants have engaged in unlawful practices in violation of the ADA, the New York State Civil laws, and the New York State and City Human Rights laws.

161.     Plaintiff has difficulties visiting Defendants' Subject Facilities, continues to be discriminated against due to the architectural barriers, which remain at the Subject

Facilities, all in violation of the ADA, the New York State Civil Rights laws, and the New York State and New York City Human Rights laws.

162.     The barriers to access the Subject Facilities have made it difficult for Plaintiff to visit them and have caused her embarrassment, humiliation, and frustration.

163.     Because the Subject Facilities are public accommodations, Defendants are responsible for complying with ADA 28 C.F.R. §36.304.

164.     The numerous architectural barriers to access the Subject Facilities have greatly inconvenienced Plaintiff.

165.     The Subject Facilities violate 42 U.S.C. §12181, §12182, §12183, §12204 of the ADA, 28 C.F.R. §36.302, and §36.304.

166.     The Department of Justice ("DOJ") published revised regulations for Title III of the ADA in the Federal Register on September 15, 2010. "These regulations adopted revised, enforceable accessibility standards called the 2010 ADA Standards for Accessible Design, '2010 Standards'". (See, 2010 Standards, Overview) These standards "set minimum requirements – both scoping and technical – for newly designed and constructed, or altered … public accommodation, and commercial facilities to be readily accessible to and usable by individuals with disabilities." Id. The DOJ provided that document in one publication and it includes the 2010 Standards for public accommodation and commercial facilities, which consist of Title III regulations at 28 C.F.R. Part 36, subpart D, and 2004 ADAAG at 36 C.F.R. Part 1191, appendices B and D.

167.     Defendants are discriminating against Plaintiff, because at their Subject Facilities they are denying her access to, as well as full and equal enjoyment of, the goods, services, facilities, privileges, advantages, and/or accommodations of the building, and its parking

lot, by means of the architectural barriers, the existence of which is in violation of the ADA, including, but not limited to, those listed below.

168.    There are two accessible parking spaces in Defendants' Subject Facilities' parking lot.

169.    There is one access aisle located in between the accessible parking spaces in the Subject Facilities' parking lot.

170.    In this Complaint, the accessible parking spaces are referred to as left and right from the point of view of a person driving into them, facing Rockaway Boulevard.

171.    "**Identification.** Parking *space* identification signs shall include the International Symbol of *Accessibility* complying with 703.7.2.1. Signs identifying van parking *spaces* shall contain the designation "van accessible." Signs shall be 60 inches (1525 mm) minimum above the finish floor or ground surface measured to the bottom of the sign." 2010 Standards §502.6.

172.    There is no sign containing the designation "van accessible" in the Subject Facilities' parking lot in violation of 2010 Standards §502.6.

173.    There is no identification sign identifying an accessible van parking space in the Subject Facilities' parking lot in violation of 2010 Standards §502.6.

174.    There is no identification sign identifying an accessible parking space in the Subject Facilities' parking lot in violation of 2010 Standards §502.6.

175.    There are no hanging signs identifying accessible parking spaces in the parking lot of the Subject Facilities in violation of 2010 Standards §502.6.

176.    "**Vehicle Spaces.** Car parking *spaces* shall be 96 inches (2440 mm) wide minimum and van parking *spaces* shall be 132 inches (3350 mm) wide minimum, shall be marked to

26

define the width, and shall have an adjacent access aisle complying with 502.3.

**EXCEPTION:** Van parking spaces shall be permitted to be 96 inches (2440 mm) wide

minimum where the access aisle is 96 inches (2440 mm) wide minimum." 2010 Standards

§502.2.

177.     "**Width.** Access aisles serving car and van parking *spaces* shall be 60 inches (1525

mm) wide minimum." 2010 Standards §502.3.1.

178.     "**Length.** Access aisles shall extend the full length of the parking *spaces* they

serve." 2010 Standards §502.3.2.

179.     "**Marking.** Access aisles shall be marked so as to discourage parking in them."

2010 Standards §502.3.3.

180.     "**Location.** Access aisles shall not overlap the *vehicular way*. Access aisles shall

be permitted to be placed on either side of the parking *space* except for angled van parking

*spaces* which shall have access aisles located on the passenger side of the parking spaces."

2010 Standards §502.3.4.

181.     The left accessible parking space is 96 inches wide.

182.     The right accessible parking space is 96 inches wide.

183.     The access aisle, located in between the two accessible parking spaces, is 22 inches

wide, in violation of 2010 Standards §502.3.1.

184.     Because each of the two accessible parking spaces in the Subject Facilities' parking

lot is less than 132 inches wide, as well as because each of the two accessible parking

spaces is 96 inches wide, and because the access aisle in between them is only 22 inches

wide, neither one of the accessible spaces in the parking lot is compliant with §502.2 of

2010 Standards to satisfy the minimum requirements for an accessible van parking space.

185.    There is no accessible van parking space in Defendants' Subject Facilities' parking lot.

186.    "**Floor or Ground Surfaces.** Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles. The exception allows sufficient slope for drainage. Built-up curb ramps are not permitted to project into access aisles and parking spaces because they would create slopes greater than 1:48." 2010 Standards §Advisory 502.4.

187.    "**Floor or Ground Surfaces.** Parking *spaces* and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking *spaces* they serve. Changes in level are not permitted. **EXCEPTION:** Slopes not steeper than 1:48 shall be permitted." 2010 Standards §502.4.

188.    Thus, maximum permissible slopes of accessible parking spaces and access aisles serving them must not be steeper than 2.08%. 2010 Standards §502.4.

189.    Defendants grossly violated §502.4 of 2010 Standards.

190.    The left accessible parking space has a running slope of 8.9%, which is equivalent to 1:11.24, in violation of 2010 Standards §502.4.

191.    The left accessible parking space has a cross slope of 3.4%, which is equivalent to 1:29.41, in violation of 2010 Standards §502.4.

192.    The access aisle has a running slope of 8%, which is equivalent to 1:12.5, in violation of 2010 Standards §502.4.

193.    The access aisle has a cross slope of 16.4%, which is equivalent to 1:6.0976, in violation of 2010 Standards §502.4.

194.      "**General**. Floor and ground surfaces shall be stable, firm, and slip resistant and shall comply with 302." 2010 Standards §302.1.

195.      In the Subject Facilities' parking lot, the ground surface of the left accessible parking space is not stable, firm, and slip resistant. Instead, it is cracked and uneven, in violation of 2010 Standards §302.1.

196.      In the Subject Facilities' parking lot, the ground surface of the access aisle is not stable, firm, and slip resistant. Instead, it is cracked and uneven, in violation of 2010 Standards §302.1.

197.      "**Grab Bars**. Grab bars for water closets shall comply with 609. Grab bars shall be provided on the side wall closest to the water closet and on the rear wall." 2010 Standards §604.5.

198.      "**Rear Wall**. The rear wall grab bar shall be 36 inches (915 mm) long minimum and extend from the centerline of the water closet 12 inches (305 mm) minimum on one side and 24 inches (610 mm) minimum on the other side. 2010 Standards §604.5.2.

199.      In the lavatory of Tandoori Kitchen, there is no rear wall grab bar in violation of 2010 Standards §604.5 and §604.5.2.

200.      "**Aisle.** Aisles shall comply with 403." 2010 Standards §904.3.1.

201.      "**Clearances.** Walking surfaces shall provide clearances complying with 403.5. **EXCEPTION:** Within *employee work areas*, clearances on *common use circulation paths* shall be permitted to be decreased by *work area equipment* provided that the decrease is essential to the function of the work being performed." 2010 Standards §403.5.

202.      "**Clear Width.** Except as provided in 403.5.2 and 403.5.3, the clear width of walking surfaces shall be 36 inches (915 mm) minimum. **EXCEPTION:** The clear width

shall be permitted to be reduced to 32 inches (815 mm) minimum for a length of 24 inches (610 mm) maximum provided that reduced width segments are separated by segments that are 48 inches (1220 mm) long minimum and 36 inches (915 mm) wide minimum." 2010 Standards §403.5.1.

203.     **"403.5.2 Clear Width at Turn.** Where the *accessible* route makes a 180 degree turn around an *element* which is less than 48 inches (1220 mm) wide, clear width shall be 42 inches (1065 mm) minimum approaching the turn, 48 inches (1220 mm) minimum at the turn and 42 inches (1065 mm) minimum leaving the turn. **EXCEPTION:** Where the clear width at the turn is 60 inches (1525 mm) minimum compliance with 403.5.2 shall not be required. 2010 Standards §403.5.2.

204.     In Punjab Liquor and Wine store, the clear width of walking surfaces – the aisles in the rear of the store – is 28 inches wide between the aisles in violation of 2010 Standards §403.5.1.

205.     In Punjab Liquor and Wine store, where the accessible route makes 180 degree-turn around the shelves that are 28 inches wide, clear width is 28 inches approaching the turn, 28 inches at the turn, and 28 inches leaving the turn, in violation of 2010 Standards §403.5.2.

206.     Plaintiff intends on visiting the Subject Facilities again within six months of the filing of this Complaint, or even sooner, as soon as the barriers to access, meticulously detailed in this Complaint, are removed. The purpose of that return visit would be to be a regular customer, who comes to enjoy goods and services offered at the Subject Facilities, as well as to determine whether, and when, the Subject Facilities have been made accessible, and to maintain standing for this lawsuit for Plaintiff's advocacy purposes, so

that other disabled individuals would be able to enjoy the Subject Facilities in the same way as able-bodied customers do, as well as to ensure that Defendants' discrimination of the disabled ended.

207.     Plaintiff strongly intends on visiting the Subject Facilities again to enjoy the same access, the same experiences, the same goods, and the same services as are available to Defendants' able-bodied customers, as well as for advocacy purposes, but does not intend, nor has any desire whatsoever, to continue to repeatedly subject herself to Defendants' unequal treatment and blatant discrimination of her through their architectural barriers to equal access and engage in the futile gesture of attempting to patronize the Subject Facilities, a business of public accommodation known to Plaintiff to have numerous and continuing pervasive architectural barriers to equal access for wheelchair users, until Defendants remediate violations at their Subject Facilities.

208.     Plaintiff recently traveled to the Subject Facilities as a customer, as well as an independent advocate for the disabled, encountered and/or observed the architectural barriers to access, which are detailed in this Complaint, engaged these barriers where physically possible, suffered legal harm, legal injury, and legal damages, and will continue to suffer such harm and injury as a result of the illegal barriers to equal access present at the Subject Facilities until the Court issues an injunction ordering Defendants to remove their architectural barriers and change their policies and procedures to make their Subject Facilities equally accessible to all.

209.     Plaintiff will continue to suffer discrimination and injury without the immediate relief provided by the ADA, as requested herein. To remedy this discriminatory situation, Plaintiff requires an inspection of the Subject Facilities to measure and photograph

architectural barriers that are in violation of the ADA to determine the areas of non-compliance with the law.

210.     The discriminatory violations described above are not an exhaustive list of Defendants' current barriers to equal access and violations of the ADA, because Plaintiff was unable to access and assess all areas of the Subject Facilities due to the architectural barriers encountered. A complete list of the Subject Facilities' ADA violations affecting Plaintiff as a wheelchair user, as well as putting in place a plan of remedial measures necessary to remove them, will require an on-site inspection by Plaintiff's representatives, pursuant to Federal Rule of Civil Procedure 34.

211.     Defendants have failed to maintain the accessible elements at the Subject Facilities. They neglected their continuing duty to review, inspect, and discover transient accessible elements, which by nature of their design or placement, frequency of usage, exposure to weather and/or other factors, are prone to shift from compliant to noncompliant, so that these elements are discovered and remediated.

212.     Defendants have failed and continue to fail to alter their inadequate maintenance practices to prevent future recurrence of noncompliance with dynamic accessible elements at the Subject Facilities in violation of 28 CFR §36.202 and §36.211.

213.     The architectural barriers, described above, made it impossible for Plaintiff, as a wheelchair user, to experience the same access to the goods, services, facilities, privileges, advantages, and accommodations of the Subject Facilities as Defendants' able-bodied customers.

214.     Defendants have failed to remove architectural barriers to accessibility to the Subject Facilities in violation of 42 U.S.C. §12182(b)(2)(A)(iv).

215.     Since 1992, Defendants have altered the areas in their Subject Facilities, which affect, or could affect, access to or usability of their places of public accommodation.

216.     Accessible elements at the Subject Facilities have been altered and/or constructed since 2010.

217.     The foregoing violations are violations of the 1991 ADAAG, and the 2010 ADAAG, as adopted by the U.S. Department of Justice. In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

218.     The removal of the physical barriers, dangerous conditions, and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. §12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. §36.304.

219.     It is readily achievable to remediate every one of the violations described above.

220.     Removal of the physical barriers and dangerous conditions present at the Subject Facilities is readily achievable because of the site conditions, the structural design of the Subject Facilities, and the straightforward nature of the necessary modifications.

221.     To assist businesses in offsetting the costs associated with complying with the ADA and removing barriers to access for individuals with disabilities, §44 of the IRS Code provides a tax credit for small business owners, and §190 of the IRS Code provides a tax deduction for all business owners, including Defendants.

222.     Removal of the architectural barriers and dangerous conditions at the Subject Facilities is readily achievable because of the relative low cost of the necessary modifications.

223.     Defendants have financial resources to make the modifications, including the financial assistance made available to Defendants by the government pursuant to §44 and/or §190 of the IRS Code.

224.     The Subject Facilities have not been designed, constructed, altered, or maintained in compliance with the accessibility standards of Title III of the ADA.

225.     By continuing to maintain and/or operate the Subject Facilities with discriminatory conditions in violation of the ADA, Defendants contribute to Plaintiff's sense of isolation and segregation and deprive Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, and accommodations available to able-bodied individuals.

226.     Defendants are required to remove existing architectural barriers to the disabled when such removal is readily achievable for its places of public accommodation that have existed prior to January 26, 1992. 28 CFR 36.304(a).

227.     If there has been an alteration to Defendants' place of public accommodation since January 26, 1992, then Defendants are required to ensure to the maximum extent feasible, that the altered portions of the Subject Facilities are readily accessible to and usable by individuals with disabilities, including people who use wheelchairs. 28 CFR 36.402.

228.     If Defendants' Subject Facilities were designed and constructed for first occupancy after January 26, 1993, as defined in 28 CFR 36.401, then they must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

229.     To date, Defendants have failed to comply with the above mandates.

230.     Defendants have violated their statutory obligation to ensure that their policies, practices, and procedures address compliance with the 2010 Standards in that they did not make reasonable accommodations for Plaintiff.

231.     Defendants violated their obligation to remove architectural barriers to let disabled Plaintiff enjoy goods and services provided by the public accommodation under their control, thus discriminating against her.

232.     Plaintiff's requested relief serves the public interest.

233.     To date, the architectural barriers, the removal of which was, and is, readily achievable, and other violations of the ADA, still exist at the Subject Facilities and have not been remedied, or altered, in such a way as to effectuate compliance with the provisions of the ADA.

234.     Pursuant to the ADA, 42 U.S.C. §12101, §12182, and 28 C.F.R. §36.304, Defendants were required to make their Subject Facilities accessible to persons with disabilities.

235.     Defendants should have removed architectural barriers by January 26, 1992. To date, Defendants have failed to comply with that mandate.

236.     Defendants' failure to remove the barriers to access constitutes a pattern and practice of intentional disability discrimination and is subject to enforcement under 42 U.S.C. §12188 and 28 C.F.R. §503.

237.     It was not structurally impracticable for Defendants to make the Subject Facilities accessible.

238.     Removal of all architectural barriers existing at the Subject Facilities was, and is, readily achievable by Defendants.

239.     Defendants may, should and are required to make reasonable accommodations at the Subject Facilities and their making them would be readily achievable.

240. Accommodations to Plaintiff and removal of architectural barriers at the Subject Facilities by Defendants are readily achievable, would not impose an undue hardship on them and would not fundamentally alter the nature of their program, activity, or nature of the business.

241. Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from Defendants' non-compliance with the ADA in connection with the Subject Facilities.

242. Defendants' failure to make their Subject Facilities accessible denied Plaintiff an equal opportunity to participate in, or to benefit from, services, or accommodations, because of her disability.

243. The effect of the practices complained of has been to deprive Plaintiff of the full and equal enjoyment of the Subject Facilities and to otherwise adversely affect her status as a member of the public interested in accessing the place of public accommodation owned, leased, leased to, constructed, maintained, managed and/or operated by Defendants.

244. The Subject Facilities are not accessible to, or readily usable by, individuals with disabilities.

245. Pursuant to 42 U.S.C. §12188, this Court was vested with the authority to grant Plaintiff injunctive relief, including an order to alter the Subject Facilities, to make them accessible to, and useable by, Plaintiff to the extent required by the ADA, as well as close the Subject Facilities until the required modifications are completed.

246. Defendants' flagrant disregard for the ADA, and the New York laws, which obligate them to make all readily achievable accommodations and modifications to remove architectural barriers to access and use of their Subject Facilities is legally inexcusable.

247.     Allowing Defendants to deleteriously detrimentally prolong their practices would encourage them to continue to blatantly disregard the ADA, the New York State Civil laws, and the New York State and City Human Rights laws, and discriminate against Plaintiff.

248.     The inexcusability of Defendants' actions is exacerbated by the fact that over 25 years have passed since the effective date of Title III of the ADA. During that time, they operated at a profit, should have accumulated sufficient funds to make alterations and had numerous opportunities to remove the architectural barriers and end discrimination, but did not do so.

249.     By not removing the architectural barriers, which barred Plaintiff's access, inconvenienced, embarrassed, and humiliated her, Defendants gave a crystal-clear message to Plaintiff that her patronage is neither needed, desired, welcomed, or wanted.

## SECOND CAUSE OF ACTION

### Violations of the New York State Human Rights Laws

250.     Plaintiff re-alleges, and incorporates, by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

251.     The New York State Human Rights Law, in relevant part, provides the following:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation … because of the … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the

> accommodations, advantages, facilities and privileges of any
> such place shall be refused, withheld from or denied to any
> person on account of … disability … .

> NYS Executive Law §296(2)(a)

252. The Subject Facilities are places of public accommodation, as defined in New York State Human Rights Law §292(9).

253. Defendants have further violated the New York State Human Rights Law by being in violation of the rights provided under the ADA.

254. Defendants are in violation of the New York State Human Rights Law by denying Plaintiff full and safe access to the benefits, accommodations, and services of the Subject Facilities.

255. Defendants do not provide Plaintiff with equal opportunity to use their public accommodations.

256. Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law §296(2)(c)(iii).

257. Defendants have not provided Plaintiff with evenhanded treatment in violation of New York State Human Rights Law §296.

258. Defendants' unequal treatment of Plaintiff was demonstrated when she was discriminated against.

259. Defendants have, because of Plaintiff's disability, directly, or indirectly, refused, withheld from, or denied her the accommodations, advantages, facilities, or privileges of their public accommodations.

260. Defendants have demonstrated that Plaintiff's patronage is unwelcome, unwanted, undesirable, unacceptable and objectionable.

261.     In violation of the New York State Human Rights Law, Defendants have discriminated against Plaintiff.

262.     Plaintiff demands compensatory damages from Defendants in the amount of $1,000 under the New York State Human Rights Law, NY CLS Exec §297(9).

### THIRD CAUSE OF ACTION

### Violations of the New York State Civil Rights Laws

263.     Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

264.     Defendants have violated Plaintiff's civil rights because of her disability.

265.     Plaintiff is entitled to recover the penalty prescribed by New York State Civil Rights Law §40-c and §40-d, in the amount of $500 for each violation from Defendants.

266.     Notice of this action is being served upon the attorney general, as required by New York Civil Rights Law, §40-d, in accordance with the statute.

### FOURTH CAUSE OF ACTION

### Violations of the New York City Human Rights Law

267.     Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

268.     The New York City Human Rights Law, in relevant part, provides the below.

> It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation:
> 1. Because of any person's actual or perceived … disability …, directly or indirectly:

> (a) to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation;

> NYC Admin. Code §8-107(4)

269. Defendants have not reasonably accommodated Plaintiff in violation of New York City's Administrative Code §8-102(4), (16), (17), (18), §8-107(4) and §8-107(15).

270. In violation of the New York City Administrative Code, Defendants have unlawfully discriminated against Plaintiff.

271. Reasonable accommodations and modifications are necessary to enable Plaintiff with the ability to enjoy non-restricted access and use of Defendants' Subject Facilities.

272. In violation of the New York City Administrative Code the owners, operators, lessees, proprietors, managers, agents and/or employees of the Subject Facilities have, because of the actual, or perceived, disability of Plaintiff directly, or indirectly, refused, withheld from, and denied her the accommodations, advantages, facilities, or privileges thereof.

273. In violation of the New York City Administrative Code, on the basis of Plaintiff's disability, Defendants have demonstrated that Plaintiff's patronage is unwelcome, objectionable and not acceptable.

274. Defendants are in violation of the New York City Human Rights Law by denying Plaintiff full and safe access to the benefits, accommodations, and services of the Subject Facilities.

275.     Pursuant to New York City Human Rights Law §8-502(c), notice of this action is

being served upon the New York City Commission on Human Rights in accordance with

the statute.

276.     Plaintiff demands compensatory damages in the amount of $1,000 from Defendants

under the New York City Human Rights Law, NYC Admin. Code §8-125.


## ATTORNEY'S FEES AND COSTS

277.     Plaintiff had to retain the undersigned counsel for the filing and prosecution of this

action. Plaintiff is entitled to have her reasonable attorney's fees, including litigation

expenses, and costs, including expert fees, paid by Defendants, pursuant to the ADA, 28

C.F.R. §36.505 and New York Executive Law §297(10). Furthermore, pursuant to the New

York City Human Rights Law, the Court may award the prevailing party reasonable

attorney's fees. Under that law's definition "prevailing" includes a plaintiff, whose

commencement of litigation has acted as a catalyst to effect policy change on the part of

the defendant. NYCHRL, in pertinent part, states the below.

> In any civil action commenced pursuant to this section, the
> Court, in its discretion, may award the prevailing party
> reasonable attorney's fees, expert fees and other costs. For
> the purposes of this subdivision, the term "prevailing"
> includes a Plaintiff whose commencement of litigation has
> acted as a catalyst to effect policy change on the part of the
> defendant, regardless of whether that change has been
> implemented voluntarily, as a result of a settlement or as a
> result of a judgment in such Plaintiff's favor. The Court shall
> apply the hourly rate charged by attorneys of similar skill
> and experience litigating similar cases in New York County
> when it chooses to factor the hourly rate into the attorney's
> fee award.

> NYC Admin. Code §8-502(g)

## COMPENSATORY AND STATUTORY MONETARY DAMAGES

278.     Plaintiff demands compensatory damages in the amount of $1,000 from Defendants

under the New York State Human Rights Law, NY CLS Exec §297(9) and the New York

City Human Rights Law, NYC Admin. Code §8-125.

> In calculating compensatory damages under the NYSHRL and the NYCHRL, a Court in the Southern District of New York just a few months ago found relevant the fact that '[t]he New York City Human Rights Commission has deemed awards of $1,000 to be sufficient in cases where complainants did not establish any particular damage 'other than what a decent and reasonable individual would suffer when faced with such ignorant behavior.'

Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429, (quoting and adapting Kreisler, 2012 WL 3961304, at *14)

279.     Plaintiff requests statutory monetary damages in the sum of $500 from Defendants

to compensate her for their violation of New York Civil Rights Law §40-c and §40-d.

> New York Civil Rights Law §40-c holds that *any person* [emphasis added] who shall violate any of the provisions of New York Civil Rights Law §40-d 'shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any Court of competent jurisdiction in the county in which the defendant shall reside. … [T]his Court has the authority to order Defendant to pay Plaintiff the $500 in statutory damages contemplated by the New York Civil Rights Law for the disability discrimination Plaintiff has suffered….
> Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429

280.     The reason Plaintiff requests $500 from Defendants, and not a lower amount

envisioned by the statutes, is due to the high number and extent of the violations, which

were alleged in detail in this complaint. Furthermore, the number of violations may be even

greater, and they may be even more extensive, than those alleged here, and it is likely that they will be revealed upon inspection of the Subject Facilities by an expert.

## **INJUNCTIVE RELIEF**

281.     Pursuant to 42 U.S.C. §12188 this Court is vested with the authority to grant Plaintiff injunctive relief, including an order to alter the Subject Facilities to make them readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, the New York State Civil Rights Law, the New York State Human Rights Law, the New York City Human Rights Law and close the Subject Facilities until requisite modifications are completed.

282.     Plaintiff requests the Court to issue a permanent injunction enjoining Defendants from disability discrimination.

283.     Plaintiff requests the Court to issue a permanent injunction and order Defendants to alter their Subject Facilities to make them readily accessible to and usable by individuals with disabilities. To achieve that, Plaintiff requests the Court to adapt relief ordered in Shariff v. Alsaydi, 2013 WL 4432218. Plaintiff requests the Court to order Defendants to prepare architectural plans remedying the violations of the 2010 Standards and to provide Plaintiff's counsel with those plans for review within 60 days of the Court's order. Plaintiff also requests that the injunction provides her with 30 days to file a motion seeking relief should Defendants' proposed architectural plans be inadequate to remedy the 2010 Standards violations specified in this complaint. Plaintiff further requests that the injunction requires Defendants to implement architectural plans and remedy the violations within 60 days of either Plaintiff's agreement, or a ruling by the Court stating that the plans are adequate.

284.     Plaintiff requests the Court to issue a permanent injunction requiring Defendants to make all necessary modifications to Defendants' policies, practices, and procedures, so that Plaintiff would not be subject to further unlawful discrimination.

## DECLARATORY RELIEF

285.     Plaintiff is entitled to declaratory relief for the violations committed by Defendants, specifying the rights of Plaintiff as to the removal of the architectural barriers from the Subject Facilities by Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby respectfully demands judgment against Defendants, jointly and severally, and requests that this Court:

A.     Grant a permanent injunction

   i.)  Enjoining Defendants, their officers, management personnel, employees, agents, successors and assigns from engaging in discrimination based on disability;

   ii.) Requiring Defendants to alter their Subject Facilities to make them readily accessible to, and usable for, Plaintiff and other individuals with disabilities;

   iii.) Compelling Defendants to make all necessary modifications to their policies, practices and procedures, so that Plaintiff would not be subject to further discrimination;

   iv.) Ordering Defendants to provide auxiliary aids, or services, or to modify their policies, or procedures, or provide an alternative method, so that Plaintiff, and other disabled individuals, would be able to obtain the full and equal enjoyment of the

Subject Facilities owned, operated, maintained, or leased, by Defendants, in accordance with Title III of the ADA, the New York State Civil Rights Laws, and the New York State and City Human Rights Laws; and

v.) Ordering Defendants to make the Subject Facilities readily accessible to and usable by Plaintiff and other individuals with disabilities.

B.  Enter declaratory judgment specifying Defendants' violations of the ADA, the New York State Civil laws, the New York State and City Human Rights laws, and declare the rights of Plaintiff as to Defendants' policies, procedures, facilities, goods and services offered to the public;

C.  Enter declaratory judgment specifying that the Subject Facilities owned, operated, leased, controlled, maintained and/or administered by Defendants violate the ADA, the New York State Civil Rights Law, and the New York State and City Human Rights laws;

D.  Enter an order requiring Defendants to alter their Subject Facilities and amenities to make them accessible to, and usable by, Plaintiff and other individuals with disabilities to the full extent required by Title III of the ADA, the New York State Civil Rights Law, and the New York State and City Human Rights laws;

E.  Hold Defendants liable for $500 in statutory monetary damages for each violation and award that sum to Plaintiff pursuant to the New York State Civil Rights Laws §40-c and §40-d;

F.  Hold Defendants liable for compensatory damages in the amount of $1,000 under the New York State and City Human Rights laws.

G.      Retain its jurisdiction over Defendants until their unlawful practices, acts and omissions no longer exist;

H.      Find that Plaintiff is a prevailing party in this litigation.

I.      Award attorney's fees, expert fees, costs, expenses, and interest together with such other and further relief at law, or in equity, to which Plaintiff may be entitled; and

J.      Award such other and further relief as it deems necessary, just, and proper.


## JURY DEMANDED

Plaintiff demands a trial by jury of all the issues of fact and damages.


Dated: July 27, 2022

*Michael Grinblat*
Michael Grinblat, Esq. (4159752)

Attorney for Plaintiff
Law Offices of Michael Grinblat
10 East 39th Street, 12th Floor
New York, NY 10016
Tel:  (347) 796-0712
Fax: (212) 202-5130
Email: michael.grinblatesq@gmail.com
*Attorney for Plaintiff*